THE MADISON SQUARE BANK, RESPONDENT, *v.* WARHAM
N. PIERCE, APPELLANT.

62 493
137a 444

62 493
3ap271

62 493
6ap254

*Bills and notes — the maker thereof compelled to pay the face value although a part
thereof has been paid to the holder by an indorser — real party in interest —
trustee of an express trust — Code of Civil Procedure, sec. 449.*

The maker of a note, payable to his own order, indorsed and delivered it to a
corporation, which, before maturity and for value, transferred it to a bank.
The corporation subsequently failed and a receiver of its property was appointed,
who paid to the bank a dividend upon the note.

The bank thereafter brought an action upon the note against the maker.

*Held,* that the bank was entitled to recover the full amount of the note, and that the
payment made thereon by the receiver was not a defense to the maker *pro tanto.*

The authorities upon this question reviewed.

Permitting the holder of a note to recover its face value against the maker, although
the indorser has paid a part of the sum secured to be paid thereby to the holder,
is not inconsistent with section 449 of the Code of Civil Procedure requiring every
action to be prosecuted in the name of the real party in interest.

The trustee of an express trust is excepted from the section, and such a trustee is
thereby defined to be "a person with whom, or in whose name, a contract
is made for the benefit of another." (Per DANIELS, J.)

In this view the holder may be deemed a trustee for the indorser.

APPEAL by the defendant Warham N. Pierce from a judgment
of the Supreme Court, entered in the office of the clerk of the city
and county of New York on the 10th day of March, 1891, upon a
decision of the court in favor of the plaintiff for $1,000, and interest
from July 26, 1890, after a trial before the court at the New York
Circuit (a jury having been waived.)

*David Keane,* for the appellant.

*J. Delahunty,* for the respondent.

DANIELS, J. :

The judgment which has been recovered is for the full amount of
a promissory note made by the defendant to the order of himself
for the sum of $1,000 payable at the Madison Square Bank in six
months from the 23d day of January, 1889. This note was indorsed
by him and transferred to the L. M. Bates Company, which company,
before the maturity of the note and for value, indorsed and delivered

it to the plaintiff. After that the L. M. Bates Company became insolvent and a receiver of its property and effects was appointed and duly qualified, and took possession of all the assets of the company. The note together with other claims were presented to the receiver, and, under orders made by the court, he paid to the plaintiff seventy-three and one-quarter per cent of the amount due upon the note. And that payment was relied upon by the defendant as a defense to the extent to which it had been made. But this defense was overruled, and the amount of the note was held to be recoverable by the plaintiff.

Whether this was a correct application of the law to the facts of this case, upon principle, certainly admits of some doubt. For by the payments which the receiver made, a right of action vested in him to recover from the maker of the note this sum of seventy-three and one-quarter per cent. It was a right of action entirely independent of the plaintiff, and capable of being enforced by him against the defendant. And this view was adopted and followed by early cases decided by the English courts (*Bacon* v. *Searles*, 1 Henry Black, 88; *Hemming* v. *Brook*, 1 Carr. & Marsh., 57; *Pierson* v. *Dunlop*, Cowp., 571, and in *Walwyn* v. *St. Quintin*, 1 Bos. & Pul., 652), which, however, is not a decisive authority in support of this position. These cases, and the others bearing upon the same point, were fully considered in *Jones* v. *Broadhurst* (9 C. B. [Manning & Scott], 173); and the conclusion was there maintained, in view of all the preceding decisions, that a defense of this nature was not available to the maker of a note or the acceptor of a bill of exchange. But that, notwithstanding the payment, the holder of the paper was still entitled to proceed against the principal debtor and recover the full amount for which the obligation had been created. And as a result of that recovery the plaintiff would hold the excess, beyond that due upon the paper, as a trustee for the benefit of the indorser by whom the payment had been made.

The principle is somewhat arbitrary, it is true, but it was considered to be the fair result of the authorities applicable to this subject, and it was not disaffirmed in *Thornton* v. *Maynard* (L. R., 10 C. P., 695). The circumstances in that case were peculiar, and the court there held the plea to be good as an equitable defense on account of the equities which had vested in the defendant.

In *Goodwin* v. *Cremer* (16 Eng. Law and Equity, 90), the same principle is applied. But in that case the question was disposed of more as a matter of pleading than otherwise. And it was followed in *Kemp* v. *Balls* (28 Eng. Law and Equity, 498), where, however, the suggestion was made, in the course of the discussion, that the amount paid might be proved by way of mitigation of damages. And this it was also held might have been proved in *Wattles* v. *Laird* (9 Johns., 327). But that was in favor of a surety in an action upon a bond given on the arrest of the debtor, and for that reason it has no special application to this controversy. And *Agra, etc., Bank* v. *Leighton* (L. R., 2 Exchequer Cases, 56), so far as it extends, is in the same direction. And a quite similar view of the law was expressed in *President, etc.,* v. *Hazard* (13 Johns., 353). The existence of this legal principle followed at the trial has also been assumed in 2 Parsons on Notes, etc , 218, where the author has collected the cases bearing upon it in a note to the statement of it. And a like conclusion of the law has been stated in 2 Daniel on Negotiable Instruments, section 1237. And the authority, although not without conflict, appears now to be sufficient to entitle the holder of commercial paper to collect the entire amount against the principal debtor, although a part payment may have previously been made by an indorser to the holder. And this right is not inconsistent with section 449 of the Code of Civil Procedure, requiring every action to be prosecuted in the name of the real party in interest. For the exception to that requirement has been made that a trustee of an express trust may sue without joining the person for whose benefit the action is prosecuted. And a person with whom or in whose name a contract is made for the benefit of another, is a trustee of an express trust within the meaning of this section, and that appears to include this obligation. For the *contract* of the defendant, held by and under the circumstances made with the plaintiff, was not only for its own benefit, but also for the benefit of the indorser by whose indorsement the paper was transferred to the plaintiff. The judgment in the action, therefore, appears to be sustained by the law, and it should be affirmed.

Van Brunt, P. J., concurred.

Barrett, J.:

I concur in the conclusion arrived at by Mr. Justice Daniels. The precise question to be here determined depends for its solution, in the first instance, upon the effect of the defendant's answer. Under this answer, the equities, as between the plaintiff and the indorsers, are not in the case. We have simply to decide, therefore, whether a part of the note has been paid to the plaintiff by the defendant or on his behalf. Nothing of the kind is set up in the answer. The defendant says that the plaintiff has received seventy-three and one-fourth per cent of the note, and that there is only due it on account of said note twenty-six and three-fourths per cent thereof. But he does not aver that this percentage was received from him or from some one who paid it on his account. The averment, therefore, is not a plea of payment *pro tanto*, and it is irrelevant to say that the plaintiff has received a part of the note without adding that it was so received from the defendant, or from some one who made the payment on his behalf. The answer was demurrable, and no other judgment could have been rendered upon such a plea than that which was rendered. But even if the matter set forth in the agreed statement of facts had been pleaded, the defendant's case would not have been helped. For it thereby appears that the payments made by the receiver of the indorsers were made, not by or on behalf of the defendant, but on account of their independent contract. The payments were so made, not because the maker was liable therefor, but because the indorsers were themselves liable therefor. Such payments were not upon account of the maker's primary obligation, nor can the maker take advantage of such payments to relieve himself from his distinct contract obligation to the holder. It is true, that the indorsers, upon payment under their contract, have a right of action over against the maker. And it may be asked, how, then, can the holder have a right of action against the maker for the full amount of the note? And how can the holder, under any circumstances, be allowed to recover from any one more than the amount of his note? There need be no inconvenience in these particulars, and the logic of the legal situation may be preserved without subjecting the maker to payment twice, or permitting the holder to receive more than his due, or frustrating the indorser's action over. In the first place, payment to the holder by the maker

fully extinguishes the latter's obligation. In the nature of things this must be so, and that, too, although the indorser may have previously paid a part of the amount due.

If the indorser has paid such part and is unwilling to permit the holder to collect from the maker the part so paid as well as the remainder, he has his direct action against the maker, and the latter can interplead the holder and bring the whole amount of the note into court for equitable division. Whether the maker be sued by the holder or by the indorser, he can interplead the other party and bring the whole amount of the note into court, thus at one and the same time satisfying the holder for the whole amount due on the note and the indorser for the amount paid thereon by him. The right of the holder to sue for the whole amount of the note is not affected by the rule of the Code which require all actions to be brought in the name of the real party in interest. The holder is not a trustee for the indorser when, after part payment by the latter, he proceeds against the maker for the whole amount of the note. It is true that after he has collected the whole amount the law implies a trust obligation to repay to the indorser the amount of his previous payment. In that sense he holds part of the money collected as trustee for the indorser. But as between the holder, as plaintiff in the action, and the maker as defendant, the action is not brought by a trustee but by the owner of the paper. And as such owner he is the real party in interest.

Any other view of this relation overlooks the true nature of the original contract and the obligations which the maker and indorser respectively assume. Besides, it has been repeatedly held that he who holds the legal title to the instrument is the real party in interest, and that the defendant has no right to show the equities under which the transfer was made, or otherwise to prove that the recovery would be for the benefit of some one other than the plaintiff in whom the legal title is vested. I agree, therefore, with Baron CRESWELL in *Jones* v. *Broadhurst*, cited by Mr. Justice DANIELS, that " the only question in which he (the defendant) has any interest is whether the party seeking to enforce payment by him, is the legal owner of the bill, and whether recovery by, and payment to, such party will enure as *a satisfaction and absolute discharge of his*

*liability* upon *the bill.*" Baron Creswell demonstrates the latter proposition with convincing logic and certainly the defendant here, who has not paid the indorsers, nor offered to pay them, nor even pleaded liability to pay them, cannot escape his contract obligation upon a mere suggestion *aliunde his answer* that, perhaps, the indorsers may prefer to hold him directly rather than look to the plaintiff as their trustee.

Thus the defendant, without offering to pay anyone, insists that he should be relieved from a part of his contract obligation. His case does not differ from that of the defendant in *Jones* v. *Broadhurst* (*supra*), and his situation is well described in the opinion in that case as follows : " The plaintiffs stand upon the record the legal owners of the bill, and the defendant as having failed to perform his contract, without any legal excuse for the breach. The defendant was the party primarily liable, and by his plea, he sets up, by way of discharge, satisfaction by one *not in privity with him in relation to such satisfaction*, and which, we think, did not inure to his discharge."

I may add to the list of authorities cited by Mr. Justice Daniels, *Thornton* v. *Maynard* (L. R., 10 C. P., 696), where Lord Coleridge, speaking of *Jones* v. *Broadhurst*, said that " the judgment of Creswell, J., in that case reviews the authorities, and finally decides that payment, either partially or in full by the drawer to the indorsee, does not dis-entitle the indorsee to sue the acceptor for the full amount of the bill."

He also cites Byles on Bills (10th ed., 210), where Sir John Byles says : " To an action against the acceptor, payment by the drawer is no plea, but only converts the holder into a trustee for the drawer *when the holder afterwards recovers from the acceptor.*"

By the payment of this judgment the defendant will have paid the note and extinguished his entire obligation thereon. The indorsers will no longer have any right of action over against him, but will have to look to the plaintiff for the amount already paid on account of their obligation. We must not speculate as to why the receiver of the indorsers has not already sued the defendant, nor why he has suffered the plaintiff to proceed as the owner of the note for the recovery of the whole amount thereof from the maker Such speculations would be unprofitable, and would only tend to confuse

the real question, namely, whether the payment by the indorser under his contract of .indorsement is a· payment by or on behalf of the maker operating *pro tanto* to extinguish the maker's obligation. Upon both principle and authority, we think such payment is in extinguishment of the indorser's liability, and of that alone, and that it is not a payment for or on behalf of the maker. We think, too, that the single payment by the maker to the holder of the entire sum due and payable by his contract inures as a satisfaction and absolute discharge of his liability upon the note.

I agree that the judgment should be affirmed, with costs.

Judgment affirmed, with costs.

| 62 | 499 |
| 133a | 329 |

IN ·THE MATTER OF THE APPLICATION OF THE BOARD OF STREET OPENING AND IMPROVEMENT, OF THE CITY OF NEW YORK, RELATIVE TO ACQUIRING TITLE TO CERTAIN LANDS FOR A PUBLIC PARK ON GROUNDS KNOWN AS ST. JOHN'S CEMETERY.

*Eminent domain — a cemetery may be taken for a public park — the expense of reinterment is a charge upon the city.*

The Board of Street Opening and Improvement of the city of New York was authorized to lay out parks below One Hundred and Fifty-fifth street, in said city, by chapter 320 of the Laws of 1887, which conferred upon it the powers usually granted in such cases, including authority to condemn "any and all lands, tenements and hereditaments" within the territorial limits stated.

Upon an appeal by the corporation of Trinity Church, owners in fee of St. John's Cemetery, proposed to be taken for a park, from an order appointing commissioners to appraise its value:

*Held,* that the board had power to condemn a cemetery for park purposes, the language of the statute being explicit and without any reservations.

The legislation relative to the *status* of a cemetery reviewed.

That, in case the cemetery was taken, and the relatives of the persons buried there or the church did not attend to the matter of reinterment, it would be the duty of the city authorities to do so.

That, in any event, the expense of reinterment must be borne, directly or indirectly, by the city.